OPINION *Page 2 
{¶ 1} On July 16, 2007, the Stark County Grand Jury indicted appellant, Antoine Hill, on one count of aggravated burglary in violation of R.C. 2911.11 and two counts of aggravated robbery in violation of R.C. 2911.01. All counts carried firearm specifications in violation of R.C. 2041.145. Said charges arose from a home invasion at the residence of Joshua Urban. Mr. Urban and his friend, Brent Sorensen, where in the residence during the incident.
 {¶ 2} A jury trial commenced on September 27, 2007. The jury found appellant guilty as charged. By judgment entry filed October 5, 2007, the trial court sentenced appellant to an aggregate term of twenty-one years in prison.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT ERRED WHEN IT FAILED TO ALLOW A CLOSER VIEW OF APPELLANT TO BE PRESENTED TO THE JURY."
 II {¶ 5} "APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ART. 1, SECT. 10 OF THE OHIO CONSTITUTION."
 III {¶ 6} "APPELLANT'S CONVICTIONS FOR AGGRAVATED BURGLARY WITH FIREARM SPECIFICATION AND TWO COUNTS OF AGGRAVATED ROBBERY WITH *Page 3 
GUN SPECIFICATIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 7} Appellant claims the trial court erred in denying his motion for the jury to "view" his purported birthmark by his right eye. We disagree.
 {¶ 8} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 9} Defense counsel requested the view of appellant's birthmark as the only evidence to be presented, and the trial court denied the request:
 {¶ 10} "MR. FRAME: Yes, Your Honor. We do not intend to call any witnesses. However, we would like to be able to present Mr. Hill to the jurors. We would ask that he be allowed to stand before the Jury box and turn his head from side to side and so all the jurors could see the appearance of his face; specifically the birthmark that was referred to and testified to.
 {¶ 11} "THE COURT: Thank you very much. The Court is going to and does, in fact, deny that motion. I'll note your objection for the record.
 {¶ 12} "Court's position is that the appropriate time to have done that would have been during the direct and cross-examination in regard to with Mr. Joshua Urban who is the person that said that he had not seen the birthmark before today, and that would have been the appropriate time to inquire. *Page 4 
 {¶ 13} "The Court gave counsel the opportunity to do that and counsel did not, so the Court is denying the motion. I'll note your objection for the record, sir." T. at 284-285.
 {¶ 14} Appellant's birthmark was brought up by defense counsel during the cross-examination of the victim, Joshua Urban. Mr. Urban acknowledged that he just noticed the birthmark during the trial. T. at 164. During a review of the proposed jury questions, one of the jurors asked if appellant's birthmark could be described i.e., area and size. T. at 209. The juror was legally blind. T. at 211. The trial court did not permit the question as it did not like the way it was phrased, but permitted defense counsel to follow up on the issue. T. at 113. Defense counsel declined to do so. T. at 213-214.
 {¶ 15} In addition, State's Exhibits 1 and 2 are the photo line-ups from which Mr. Urban identified appellant (apart from his prior acquaintance with him). These photographs show the birthmark. T. at 212. Defense counsel asked Mr. Urban about appellant's birthmark, the one "by his eye right here, (Indicating)" and Mr. Urban testified he had never noticed it before. T. at 164.
 {¶ 16} Upon review, we find the trial court did not abuse its discretion in how it resolved the issue.
 {¶ 17} Assignment of Error I is denied.
 II {¶ 18} Appellant claims he was denied the effective assistance of trial counsel. Specifically, appellant claims his counsel was deficient in not pursuing the questioning of Mr. Urban about the birthmark, and in eliciting testimony about appellant's active warrant. We disagree. *Page 5 
 {¶ 19} The standard this issue must be measured against is set out inState v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 {¶ 20} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v.Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 21} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
 {¶ 22} This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." State v. Post (1987), 32 Ohio St.3d 380, 388.
 {¶ 23} It was not until Mr. Urban's cross-examination that the issue of the birthmark was raised. T. at 164. On direct, Mr. Urban testified he has known appellant for a "couple years." T. at 149. On cross-examination, Mr. Urban stated that at the time of the incident, he saw who was robbing him and recognized appellant. T. at 172. However, he had never seen the birthmark by appellant's right eye that was visible in the courtroom. T. at 164. Mr. Urban acknowledged that he did not think his identification would hold up in court because "of the mask that was on the face." T. at 173. At this point, defense counsel had created the impression that Mr. Urban just *Page 6 
assumed it was appellant because "it just so happens Antoine stops at my house a month before it happens" and appellant is a black man like the robber, and Mr. Urban's admitted possible marijuana use prior to the robbery could have clouded his identification. T. at 165, 168-169.
 {¶ 24} Given the status of the cross-examination, we find defense counsel's failure to re-question Mr. Urban on the birthmark was trial strategy, and any further elaboration on the issue could have bolstered Mr. Urban's identification of appellant.
 {¶ 25} In addition, appellant argues his counsel was ineffective by bringing up his outstanding warrant for driving under suspension. It was clearly established that appellant had given police a false name and ran from them. He was eventually found hiding in a closet. T. at 251-252.
 {¶ 26} As the following colloquy with Massillon Police Detective Thomas Minarcheck establishes, defense counsel was attempting to explain why appellant ran from the police:
 {¶ 27} "Q. Are you aware if Mr. Hill had a warrant for driving under suspension at the time that you arrested him?
 {¶ 28} "A. No, I was not, sir.
 {¶ 29} "Q. And if he did, that would be another reason why somebody might run from you as well, would you agree?
 {¶ 30} "A. That could be a reason. I never seen too many people run for a DUS warrant." T. at 264. *Page 7 
 {¶ 31} We find there was a legitimate reason for raising the issue of the outstanding warrant therefore, we find no deficiency by defense counsel in pursuing the alternative reason for appellant's deception and flight.
 {¶ 32} Upon review, we find no ineffective assistance of counsel.
 {¶ 33} Assignment of Error II is denied.
 III {¶ 34} Appellant claims his convictions were against the weight of the evidence. We disagree.
 {¶ 35} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 36} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v.Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990),498 U.S. 881.
 {¶ 37} Appellant only challenges the credibility of the two victims and their ability to identify him as the person who broke in and robbed them.
 {¶ 38} Not only did Mr. Urban and Mr. Sorensen identify appellant immediately from the photo arrays, but they also identified him in court. T. at 147, 156, 201, 203-204, *Page 8 
225-226, 247-249, 259. Both Mr. Urban and Mr. Sorensen knew appellant before the incident. T. at 149, 224-225. Mr. Urban was able to immediately identify appellant during the incident. T at 149, 172. Further, Mr. Urban testified appellant was aware that he had the items that were taken from his home i.e., Xbox-360, PlayStation 2, jewelry. T. at 150-151.
 {¶ 39} Although it is true that Mr. Urban told defense counsel's investigator he did not think his identification would hold up in court, Mr. Urban excused this statement by saying he was drunk when he said it. T. at 196.
 {¶ 40} Clearly, the jury chose to accept the victims' identifications of appellant in finding appellant guilty of the offenses. Upon review, we find the two positive identifications to be sufficient to support the jury's findings, and no manifest miscarriage of justice.
 {¶ 41} Assignment of Error III is denied.
 {¶ 42} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
 Farmer, J. Hoffman, P.J. and Delaney, J. concur. *Page 9 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. *Page 1